Citation Nr: 1719237 
Decision Date: 05/31/17 Archive Date: 06/06/17

DOCKET NO. 07-16 179 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Montgomery, Alabama


THE ISSUE

Entitlement to service connection for an acquired psychiatric disability, to include schizophrenia and depression.


REPRESENTATION

Veteran represented by: The American Legion


ATTORNEY FOR THE BOARD

Jane R. Lee, Associate Counsel



INTRODUCTION

The Veteran served on active duty from June 1999 to September 2001.

This appeal is before the Board of Veterans' Appeals (Board) from a March 2006 rating decision of a Department of Veterans Affairs (VA) Regional Office (RO) in Montgomery, Alabama, which, in part, denied service connection for depression with psychotic features.

The scope of the Veteran's claim for a psychiatric disability includes any disability that reasonably may be encompassed by the claimant's description of the claim, reported symptoms, and the other information of record. Clemons v. Shinseki, 23 Vet. App. 1 (2009) (per curiam).

In January 2011 and March 2013, the Board remanded the issue for further evidentiary development. A remand by the Board confers on the claimant, as a matter of law, the right to compliance with the remand orders. Stegall v. West, 11 Vet. App. 268, 271 (1998). While substantial compliance is required, strict compliance is not. D'Aries v. Peake, 22 Vet. App. 97, 105 (2008) (citing Dyment v. West, 13 Vet. App. 141, 146-47 (1999)).

In this case, the Agency of Original Jurisdiction substantially complied with the Board's March 2013 remand instructions by associating updated VA treatment records, obtaining a July 2016 VA addendum opinion, and readjudicating the issue in a January 2017 Supplemental Statement of the Case.

FINDINGS OF FACT

1. The evidence does not demonstrate that the Veteran's schizophrenia had an onset during or is etiologically related to his active duty service.

2. The Veteran reported having had depression at service separation, and resolving any doubt in his favor, his current depression had its onset during service.

CONCLUSIONS OF LAW

1. The criteria for service connection for an acquired psychiatric disability have not been met. 38 U.S.C.A. §§ 1110, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304, 3.307, 3.309 (2016).

2. The criteria for service connection for depression have been met. 38 U.S.C.A. §§ 1110, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

Under applicable criteria, VA has certain notice and assistance obligations to claimants. See 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2016). VA's duty to notify was satisfied by letters on November 4, 2005, and March 20, 2006. See 38 U.S.C.A. §§ 5102, 5103, 5103A (West 2014); 38 C.F.R. § 3.159; see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). 

As to VA's duty to assist, all necessary development has been accomplished. See Bernard v. Brown, 4 Vet. App. 384 (1993). The Veteran's service treatment records, VA medical records, identified private treatment records, and Social Security Administration records have been obtained.

Also, the Veteran was provided a VA examination in March 2011, and an addendum was obtained in July 2016. Taken as a whole, this examination, its associated report, and the addendum opinion are adequate. Along with the other evidence of record, they provided sufficient information and a sound basis for a decision on the Veteran's claim. 38 C.F.R. § 3.159(c)(4); Barr v. Nicholson, 21 Vet. App. 303 (2007).

Therefore, VA has satisfied its duties to notify and assist, and there is no prejudice to the Veteran in adjudicating this appeal. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994). 


II. Service Connection

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303 (d).

Service connection requires: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); see also Caluza v. Brown, 7 Vet. App. 498 (1995).

The U.S. Court of Appeals for Veterans Claims (Court) has held that "Congress specifically limits entitlement for service-connected disease or injury to cases where such incidents have resulted in a disability. In the absence of proof of a present disability there can be no valid claim." Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992); see also Rabideau v. Derwinski, 2 Vet. App. 141, 143-44 (1992).

Additionally, where a veteran served 90 days or more of active service, and certain chronic disease, such as psychosis, become manifest to a degree of 10 percent or more within one year after the date of separation from service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309(a). While the disease need not be diagnosed within the presumption period, it must be shown, by acceptable lay or medical evidence, that there were characteristic manifestations of the disease to the required degree during that time. Id.
If the disorder at issue is a "chronic disease" listed under 38 C.F.R. § 3.309(a), 38 C.F.R. § 3.303(b) applies. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). Where the evidence shows a "chronic disease" in service or "continuity of symptoms" after service, the disease shall be presumed to have been incurred in service. For the showing of "chronic disease" in service, there is required a combination of manifestations sufficient to identify the disease entity and sufficient observation to establish chronicity at the time. With chronic disease as such in service, subsequent manifestations of the same chronic disease at any later date, however remote, are service-connected, unless clearly attributable to intercurrent causes. If a condition noted during service is not shown to be chronic, then generally, a showing of "continuity of symptoms" after service is required for service connection. 38 C.F.R. § 3.303(b).

In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990). Competency of evidence differs from weight and credibility. Competency is a legal concept determining whether testimony may be heard and considered by the trier of fact, while credibility is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) ("although interest may affect the credibility of testimony, it does not affect competency to testify").

Generally, the degree of probative value which may be attributed to a medical opinion issued by a VA or private treatment provider takes into account such factors as its thoroughness and degree of detail, and whether there was review of the claims file. See Prejean v. West, 13 Vet. App. 444, 448-49 (2000). Also significant is whether the examining medical provider had a sufficiently clear and well-reasoned rationale, as well as a basis in objective supporting clinical data. See Bloom v. West, 12 Vet. App. 185, 187 (1999); Hernandez-Toyens v. West, 11 Vet. App. 379, 382 (1998); see also Claiborne v. Nicholson, 19 Vet. App. 181, 186 (2005) (rejecting medical opinions that did not indicate whether the physicians actually examined the veteran, did not provide the extent of any examination, and did not provide any supporting clinical data). The Court has held that a bare conclusion, even one reached by a health care professional, is not probative without a factual predicate in the record. Miller v. West, 11 Vet. App. 345, 348 (1998).

A significant factor to be considered for any opinion is the accuracy of the factual predicate, regardless of whether the information supporting the opinion is obtained by review of medical records or lay reports of injury, symptoms and/or treatment, including by a veteran. See Harris v. West, 203 F.3d 1347, 1350-51 (Fed. Cir. 2000) (examiner's opinion based on accurate lay history deemed competent medical evidence in support of the claim); Kowalski v. Nicholson, 19 Vet. App. 171, 177 (2005) (holding that a medical opinion cannot be disregarded solely on the rationale that the medical opinion was based on history given by the veteran); Reonal v. Brown, 5 Vet. App. 458, 461 (1993) (holding that the Board may reject a medical opinion based on an inaccurate factual basis).

VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C.A. § 5107; Gilbert, 1 Vet. App. at 49. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination, the benefit of the doubt is afforded the claimant.

Analysis

The Veteran asserts that he has a current psychiatric disability that actually began in 1999 during active duty service. He further notes that he did not begin receiving treatment until shortly after separation from service, specifically within the first year after separation.

Service treatment records (STRs) reflect that at the time of enlistment, the Veteran denied frequent trouble sleeping, depression or excessive worry, loss of memory or amnesia, and nervous trouble of any sort; and received a normal psychiatric evaluation. STRs do not reflect that the Veteran sought any psychiatric treatment during service. On the July 2001 Report of Medical Examination that was conducted in contemplation of separation from service, the Veteran's psychiatric evaluation was regarded as normal. On his July 2001 Report of Medical History which was completed by the Veteran upon service separation, he denied having received counseling or having been evaluated for a mental condition, but did report frequent trouble sleeping, and depression or excessive worry. The examiner addressed those reports, noting complaints of insomnia and increased stress, and reports of trouble concentrating and paying attention, as well as decreased enjoyment of activities and motivation. The examiner also noted possible depression and suicidal ideation. The examiner discussed treatment options with the Veteran and the Veteran indicated that he would see a social worker. He refused medication at that time. He was separated from service in September 2001 for misconduct.

Social Security Administration (SSA) records reflect that the Veteran was found to be disabled as of November 29, 2004, based on a primary diagnosis of paranoid schizophrenia and a secondary diagnosis of generalized anxiety disorder.

Private treatment records reflect that the Veteran was hospitalized by his mother and brother from November 2004 to December 2004 after having exhibited increasingly bizarre behavior over the past month. The mother told the hospital personnel that the Veteran had started to stay in his room more and slept most of the day. At hospital discharge, the diagnosis was psychosis.

According to a private January 2005 Resident Clinic Chart, the Veteran reported hearing voices that chided him about his failed army service. Assessment was depression with psychotic features. Other private records dated in 2005 reflect assessment of major depressive disorder (MDD) with past psychotic features.

VA treatment records from October 2005 to November 2005 reflect assessments of schizophrenia since October 2004, depression since November 2004, and sleep problems.

In October 2005, VA received the Veteran's application for compensation benefits. As relevant, the Veteran indicated that he had depression with a secondary condition, with an onset date of 1999. In a November 2005 statement, the Veteran stated that he had depression with psychotic features that has existed since service.

Private treatment records from November 2005 to June 2006 reflect reports of hearing voices occasionally since his middle teens and consistently hearing voices for about two years. He was diagnosed with schizoaffective disorder, depressed; substance abuse, rule out substance-induced mood or psychotic disorder; and a history of MDD with psychotic features and substance-induced mood disorder. In March 2007, A.U., who treated the Veteran since July 2006 referred him to VA psychiatry, noting a diagnosis of schizoaffective disorder and cannabis abuse.

VA treatment records from March 2007 to July 2010 reflect the Veteran's reports that he was hospitalized in 2004 for auditory hallucination, paranoia, and ideas of reference; and that he last experienced psychotic symptoms in 2005 due to noncompliance with medication. He also reported depressive symptoms and premonition dreams during service, but stated that he did not receive any mental health treatment. Symptoms included anxiety, insomnia, depression, suicidal ideation, and auditory hallucinations. Diagnostic impressions, assessments, and diagnoses included schizophrenia; history of depression with psychotic features; medication non-compliance; cannabis, alcohol, and nicotine dependence; schizoaffective disorder; and psychotic disorder, not otherwise specified. In June 2009, the Veteran experienced an exacerbation of schizophrenia, related to medication non-compliance and substance abuse, as evidenced by the Veteran's report of feelings of depression, suicidal ideation, and command auditory hallucinations. The diagnoses at discharge were substance-induced mood disorder, substance-induced psychosis, tobacco use disorder, cannabis dependence, and history of treatment noncompliance.

A March 2011 VA examination report reflects diagnoses of schizophrenia and marijuana abuse/dependence in early remission. The Veteran reported first experiencing "abnormal thinking and visualizations" during childhood. Specifically, he reported that he had a premonition that something bad was going to happen to his grandmother, who died the next day, but that he did not receive any mental health treatment prior to service. He noted some in-service feelings of depression related to being homesick. He also stated that he started hearing voices in 2000, which would come and go and were not constant, although he never told anyone about the voices and never sought mental health treatment while in service. The VA clinical psychologist stated that, at this time, the Veteran did not appear to meet the criteria for any depressive disorder and that the symptoms were consistent with schizophrenia, from which the record reflects significant impairments since 2004. She provided an unfavorable opinion, which the Board later found to be inadequate as it lacked sufficient rationale. 

In a July 2016 addendum, a VA clinical psychologist reviewed the claims file and determined that the Veteran's schizophrenia was less likely as not incurred during his active duty service, including his in-service complaints of depressive and excessive worry. The examiner noted the Veteran's inconsistent reports of symptoms; specifically, at the March 2011 VA examination, the Veteran noted abnormal thinking and visualizations beginning in childhood, but denied any mental health symptoms at his enlistment examination and was given a normal psychiatric evaluation. Additionally, the examiner noted that the Veteran was never diagnosed or treated for any psychiatric disability during service. The examiner recognized the notation of possible depression and suicidal ideation on the separation examination report and the Veteran's report of depression, excessive worry, and frequent trouble sleeping, but explained that those symptoms alone do not constitute a psychiatric disorder. Rather, the examiner stated that they could be symptoms of a number of psychiatric disorders, and could be associated with adjustment issues related to the Veteran's discharge, as he was being discharged due to misconduct. As such, after reviewing the evidence, she found that the totality of the evidence does not support a diagnosis of schizophrenia during service.

The VA clinical psychologist also explained that the Veteran was able to maintain a job after separation, which an individual with schizophrenia would likely have trouble doing. She noted that his first psychiatric hospitalization and schizophrenia diagnosis came in 2004, three years after discharge from the military. She also noted his heavy marijuana use after separation and prior to his 2004 psychiatric hospitalization.

After review of all of the evidence of record, lay and medical, the Board finds that the preponderance of the evidence is against the Veteran's claim of entitlement to service connection for schizophrenia.

The Board finds that the Veteran has a current diagnosis of an acquired psychiatric disability and therefore meets the threshold element of a current disability.

Moreover, the Veteran is presumed to have been sound from a psychiatric standpoint upon entrance into service. At the Veteran's enlistment examination, he denied any psychiatric problems, and no objective psychiatric abnormality was found or noted at enlistment. There is no contemporary medical evidence of psychiatric treatment prior to service for the Veteran. In addition, the Veteran and his representative have not contended that a preexisting psychiatric disorder was aggravated by his military service. Thus, the presumption of soundness applies in the present case. 38 U.S.C.A. §§ 1111, 1153 (West 2014); 38 C.F.R. §§ 3.304, 3.306 (2016). See also Quirin v. Shinseki, 22 Vet. App. 390, 396 (2009); Wagner v. Principi, 370 F.3d 1089, 1096 (Fed. Cir. 2004); VAOPGCPREC 3-2003 (July 16, 2003).

The Board next finds that there is competent evidence of in-service psychiatric symptoms. Although STRs are negative for any psychiatric treatment, the Veteran reported on his separation examination report that he had had frequent trouble sleeping and depression or excessive worry, symptoms which are capable of lay observation. 

However, the preponderance of the evidence fails to establish a causal relationship between the Veteran's current schizophrenia and his active duty service. The only competent and adequate opinion in the record is the addendum opinion authored by the July 2016 VA clinical psychologist, finding that the Veteran's schizophrenia was less likely than not incurred during service, including the Veteran's in-service complaints of depression or excessive worry. The examiner had the benefit of reviewing his claims file, which includes the Veteran's lay reports of the onset of his schizophrenia, his in-service reports of psychiatric symptoms, and his post-service diagnosis of schizophrenia. Notably, the July 2016 VA examiner stated that the symptoms the Veteran marked at separation are not specific to schizophrenia. She also stated that those symptoms alone did not constitute a psychiatric disorder. The examiner also noted that the Veteran was able to work after separation, which he would have had trouble doing if he had schizophrenia. 

The Board acknowledges the Veteran's contentions that his schizophrenia is related to his active service. Lay evidence may be competent to establish medical etiology or nexus (Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009)), but VA can give lay evidence whatever weight to which it concludes the evidence is entitled. Waters v. Shinseki, 601 F.3d 1274, 1278 (Fed. Cir. 2010). Additionally, lay evidence has been found to be competent with regard to a disease with "unique and readily identifiable features" that is "capable of lay observation." See Barr v. Nicholson, 21 Vet. App. 303, 308-09 (2007) (concerning varicose veins); see also Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007) (a dislocated shoulder); Charles v. Principi, 16 Vet. App. 370, 374 (2002) (tinnitus); Falzone v. Brown, 8 Vet. App. 398, 405 (1995) (flatfoot). That notwithstanding, a veteran, without the requisite medical training, is not competent to provide evidence as to more complex medical questions and, specifically, is not competent to provide an opinion as to etiology in such cases. See Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007) (concerning rheumatic fever); see also Routen, 10 Vet. App. 183.

In this case, the Veteran is competent to report that he experienced symptoms of depression, excessive worry, and frequent trouble sleeping during service, as these symptoms are readily observable. However, as a layperson without the requisite medical training, he is not competent to diagnose his in-service symptoms or opine as to the etiology of his current diagnosis of schizophrenia. Accordingly, the Board finds that the Veteran's lay reports as to etiology of his schizophrenia are not probative and ultimately inconsistent with, and outweighed by the probative medical evidence.

The Board further finds that a psychosis is not demonstrated within the first post-service year. A psychosis is not shown in record until 2004, approximately three years after separation from service. As such, the chronic disease presumption does not apply as the diagnosis was not made within the first year after separation. See 38 C.F.R. §§ 3.307(a)(3), 3.309(a).

The Board recognizes the Veteran's statement that his psychiatric symptomatology was chronic during service and continuous since separation. However, there is no evidence of any chronic symptoms of a psychosis. As indicated, the July 2016 VA examiner stated that his in-service depression, excessive worry, and frequent trouble sleeping are not symptoms of schizophrenia. Not only is there no evidence of chronic symptoms of a psychosis during service, there is no evidence of symptoms or treatment for a psychosis until 2004. See Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000) (lengthy period of absence of medical complaints for condition can be considered as a factor for consideration in deciding a claim). 

For these reasons, the evidence weighs against a finding that the Veteran's schizophrenia was incurred in, or is related to, active duty service, nor is such diagnosis presumed to have been incurred therein. Accordingly, service connection for schizophrenia must be denied. As the preponderance of the evidence is against the service connection claim for schizophrenia, the benefit-of-the-doubt doctrine is not applicable. See 38 U.S.C.A. § 5107(b); Gilbert, 1 Vet. App. at 53-56.

Nonetheless, the Board also considered the Veteran's primary contention, as related on his original service connection claim, that the symptoms of depression that he first experienced during service have persisted and that he has continued to experience the same symptoms on a recurrent basis ever since. 

Since the filing of the claim and during the pendency of the appeal, the weight of the evidence shows that the Veteran is also diagnosed with depression. The Board recognizes that the 2011 examiner stated that the Veteran "did not appear" to meet the criteria for a depressive disorder, which alone appears to be a speculative opinion. Moreover, the examiner offered no rationale to support such opinion. Thus, on the question of whether depression is currently diagnosed, the 2011 opinion is of little probative value and ultimately inadequate to decide the claim. 

However, the remaining evidence dated since the filing of the claim, reflects multiple diagnoses of depression. See VA current problem list, July 2012 VA MH Walk-in/Crisis Team notes reflect increased depression; June 2013 VA Nursing Admission Notes reflecting that he endorsed depression; July 2012 VA staff physician assessed depression; May 2014 VA notes reflecting a diagnosis of depression with suicidal ideation; February 2015 VA Homeless Program Notes reflecting that he continues to have exacerbation of depression. Thus, a current disability of depression is demonstrated.

Additionally, and as determined above, the Board finds that the Veteran experienced mental health symptoms, to include depression, during service, as evidenced by his competent and credible lay reports shown on his separation Report of Medical History and the examiner's acknowledgement of those symptoms on the separation Report of Medical Examination. 

Therefore, the dispositive issue in this case becomes whether the current depression is etiologically related to the depressive symptoms during service. 

Indeed, depression, is not a "chronic disease" listed under 38 C.F.R. § 3.309 (a) (2016); therefore, the presumptive service connection provisions based on "chronic" in-service symptoms and "continuous" post-service symptoms under 38 C.F.R. § 3.303 (b) do not apply. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

The probative VA opinion obtained in this case addressed the etiology of the Veteran's schizophrenia, but not the etiology of the Veteran's depression. 

Further development of the claim could be undertaken so as to obtain an additional medical opinion clarifying the etiology of the Veteran's depression. Nonetheless, the Board considered alternative theories that constitute a nexus between the current claimed disability and service. Indeed, the Veteran in this case, as a layperson, may be competent on a variety of matters concerning the nature and cause of disability. Jandreau v. Shinseki, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007). Additionally, he is certainly competent to report that he suffered a depressed mood during service. See generally Charles v. Principi, 16 Vet. App 370, 374 (2002). However, once the threshold of competency is met, the Board must consider how much of a tendency a piece of evidence has to support a finding of the fact in contention. Not all competent evidence is of equal value. 

The Board finds that the Veteran's report that his depression is related to his service has some tendency to make a nexus more likely than it would be without such an assertion. See Lynch v. Ne. Reg'l Commuter R.R. Corp., 700 F.3d 906, 915 (7th Cir. 2012) ("[E]xpert testimony may be necessary where some special expertise is necessary to draw a causal inference because of its esoteric nature, but that in general the causal sequence can be inferred from circumstantial evidence, expert testimony, or common knowledge."); Moody v. Maine Cent. R.R. Co., 823 F.2d 693, 695-96 (1st Cir. 1987) (expert testimony not required if the connection between the negligence and the injury is fairly self-evident, such as that a broken leg would result from being struck by a motor vehicle). 

Given the absence of any intervening injury, the evidence tends to show that the current depression is at least as likely as not caused by service. Although a lay person (including a lay adjudicator) is not always competent to relate past symptoms to a current diagnosis, in this case it is within the competence of the lay veteran and the lay adjudicator to reach that conclusion based upon the overall factual picture including the length of time and the observable nature of the symptoms. See Kahana v. Shinseki, 24 Vet. App. 428, 438 (2011) (Lance, J., concurring) (noting that "any given medical issue is either simple enough to be within the realm of common knowledge for lay claimants and adjudicators or complex enough to require an expert opinion").

In summary, the evidence includes (a) depressive symptoms competently reported at service separation in 2001, at which time the separation examiner suggested psychiatric treatment options, to include medication, (b) medical records showing assessments of a depressive disorder after service beginning in 2004, only three year after service when he was hospitalized for psychiatric care, and ever since, (c) the Veteran's competent and credible reports of having had a depressed mood since service, and (d) no evidence of an intervening event and no evidence to contradict the Veteran's lay reports of recurrent depressive symptomatology since service. Thus, the Veteran's competent and credible statements constitute an alternative theory of nexus between his current depression and service. 38 C.F.R. § 3.303 (d).

In consideration of the foregoing, and resolving reasonable doubt in favor of the Veteran, the Board finds that the criteria for direct service connection for depression under 3.303(d) have been met. 38 U.S.C.A. § 5107 (b); 38 C.F.R. § 3.102.

ORDER

Entitlement to service connection for schizophrenia is denied.

Service connection for depression is granted.



______________________________________________
S. B. MAYS
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs